IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| DAVID EUGENE YUSKA, | ) Bankruptcy No. 14-1504 |
| | ) |
| Debtor. | ) |

**MEMORANDUM RE: APPLICABILITY OF HARRIS v. VIEGELAHN**

On September 18, 2015 the Court held a telephonic hearing. At that hearing, the Court asked the parties to comment on whether the Court should revisit its decision denying debtor's request to have the Chapter 7 trustee pay over money in her possession when the case was converted from Chapter 13 to Chapter 7. In particular, the Court raised the issue of whether Harris v. Viegelahn, 135 S. Ct. 1829 (2015), applied to this case. Debtor appeared pro se. John Waters and Laurie McCown appeared for the Iowa Department of Revenue. Christopher Moran appeared for the Internal Revenue Service. John Schmillen appeared for the United States Trustee. Rene Hanrahan, Chapter 7 Trustee, and Eric Lam, her attorney, also appeared.

After hearing arguments, the Court gave the parties 14 days to brief the issue. The Iowa Department of Revenue, the Internal Revenue Service, and the case Trustee filed briefs. They all argued that Harris is distinguishable and that the Court should not alter, amend, or otherwise revisit its ruling. The Court finds that Harris is distinguishable and the Court will not revisit its previous ruling.

1

## BACKGROUND

Before Debtor filed his bankruptcy petition, the Iowa Department of Revenue ("IDOR") sued Debtor in Iowa District Court. IDOR garnished rent payments Debtor was owed under a farmland lease. IDOR's garnishment resulted in $40,704.00 in rent being paid to the Tama County Sherriff. Debtor then filed a Chapter 13 bankruptcy petition. The Iowa District Court judge ordered the clerk of court, who was holding the $40,704.00 in garnished rent, to turn over those funds to the Chapter 13 Trustee.

IDOR moved to convert this case to Chapter 7. The Court granted that motion. After conversion, the Chapter 13 remitted the $40,704.00 in farmland rents, less fees, to the Chapter 7 Trustee. Debtor then filed what was docketed as a Motion to Use Cash Collateral. That motion sought return of the full $40,704.00 in rents. The Court denied Debtor's motion.

Later, the Supreme Court decided Harris v. Viegelahn, 135 S. Ct. 1829 (2015). That case addressed whether postpetition wages held by a Chapter 13 Trustee should be paid back to a debtor or turned over to the case Trustee after conversion to a Chapter 7. After reviewing Harris, this Court, on its own motion, held a hearing on whether Harris applied here and whether the Court should revisit its ruling on Debtor's Motion to Use Cash Collateral. The Trustee and creditor parties all argued that Harris addressed postpetition wages held by the Trustee.

2

They argued that Harris does not apply and that the Court need not revisit its previous ruling.

## DISCUSSION

The filing of a Chapter 7 petition creates the bankruptcy estate, which includes, with some exceptions, all of the debtor's "legal and equitable interest in property" at the time of filing.  11 U.S.C. § 541(a)(1) (2012).  It specifically excludes wages earned for services rendered after the date of the petition. § 541(a)(6).  A bankruptcy estate created by a filing under Chapter 13, however, does include wages earned for services rendered after the date of the petition. § 1306(a).  And when a case is converted from Chapter 13 to Chapter 7, postpetition wages are no longer a part of the bankruptcy estate.  See § 348(f)(1)(A).  Before Harris, there was some question about whether, after such conversion, the Trustee should return any undistributed postpetition wages to the debtor, or distribute them to creditors according to the plan.

The United States Supreme Court settled this question.  Harris v. Vigelahn, 135 S. Ct. 1829 (2015).  There, the Court held "that a debtor who converts to Chapter 7 is entitled to return of any postpetition wages not yet distributed by the Chapter 13 trustee."  Id.  The Court also found that, generally, there is "nothing in the Code denying debtors funds that would have been theirs had the case proceeded under Chapter 7 from the start."  Id. at 1837–38.  The Court concluded

3

that Debtor would have had possession of and right to all post-petition wages if the case had been filed under Chapter 7.  Id.  Thus, the Court ordered that the funds held by trustee to be released to the debtor.  Id.

Here, when Debtor filed his Chapter 13 petition, his farmland tenants owed him rent under the lease agreement.  The parties arguing that Harris does not apply point out that the rent owed Debtor was not "wages" for services that Debtor rendered **post**petition.  Instead, the rents were owing to Debtor **pre**petition for property rents, and would have entered into the bankruptcy estate in both Chapter 13 and Chapter 7.

Under § 541(a)(1) Debtor's "legal and equitable interest in property" at the time of filing comes into the bankruptcy estate.  The farmland rents that was owed to Debtor were such an interest: Section 541(a)(6) makes clear that "[p]roceeds, product, offspring, **rents**, or profits of or from property of the estate" comes into the bankruptcy estate under both Chapter 13 and Chapter 7.  As a result, even if the case had started in Chapter 7, the farmland rents would have gone into the estate.

The test provided in Harris is whether the funds would have gone to the bankruptcy estate if "the case proceeded under Chapter 7 from the start."  Harris, 135 S. Ct. at 1837–38.  The farmland rents at issue would have come into the estate under § 541(a)(1) if the case had started under Chapter 7.

**CONCLUSION**

Therefore, the Court will not revisit its ruling on Debtor's Motion to Use Cash Collateral.

Dated and Entered:

April 25, 2017

/s/ Thad J. Collins
THAD J. COLLINS
U.S. BANKRUPTCY JUDGE